## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WIRTGEN AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-770-RGA |
| | ) | |
| CATERPILLAR INC. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

### [PROPOSED] STIPULATED PROTECTIVE ORDER

This Stipulated Protective Order ("Protective Order") is made by and between Plaintiff Wirtgen America, Inc. ("Wirtgen America") and Defendant Caterpillar Inc. ("Caterpillar") (collectively, the "Parties").

**WHEREAS**, the Parties are in need of discovery in the above-captioned action (the "Civil Action");

**WHEREAS**, the Parties seek to prevent undue or unwarranted disclosure of non-public, confidential, personal, commercial, financial, proprietary, trade secret, know-how, and design information and/or materials which may be divulged pursuant to discovery in the Civil Action;

**WHEREAS**, pursuant to this Court's Scheduling Order, *see* D.I. 28, and due to the overlap between the Civil Action and *In the Matter of Certain Road Milling Machines and Components Thereof*, Investigation No. 337-TA-1067 (Int'l Trade Comm'n) (the "1067 Investigation"), the discovery produced or taken in the 1067 Investigation may be used as if produced or taken in the Civil Action;

**WHEREAS**, the Parties also agree that due to the overlap between the Civil Action and *In the Matter of Certain Road Construction Machines and Components Thereof*, Investigation No. 337-TA-1088 (Int'l Trade Comm'n) (the "1088 Investigation"), the discovery produced or taken in the 1088 Investigation may be used as if produced or taken in the Civil Action; and

**WHEREAS,** the Parties further agree to and authorize the exchange and use of discovery produced or taken in the 1067 Investigation and the 1088 Investigation, including information of non-party corporate affiliates of the Parties, such as Wirtgen GmbH, designated in the 1067 Investigation or the 1088 Investigation as "Confidential Business Information," "Confidential Source Code, Outside Attorneys' Eyes Only," or any other designation under the protective orders in the 1067 Investigation or the 1088 Investigation (including any amendments) in this Civil Action in accordance with this Protective Order.

**NOW**, **THEREFORE**, in consideration of the mutual promises herein and pursuant to the

Federal Rules of Civil Procedure, the Parties agree as follows:

I. **DEFINITIONS**

A.   <u>Discovery Material</u>. "Discovery Material" means all items or information, or any part thereof, regardless of the medium or manner generated, stored, or maintained, including, among other things, documents, materials, information, responses, answers, testimony, transcripts, or tangible things, that are produced, provided, disclosed, or generated in connection with discovery in the Civil Action.

B.   <u>Outside Counsel</u>. "Outside Counsel" means the attorneys appearing as counsel for, or who are retained to represent or advise, a Party, and who are not employees of a Party, and each of their paralegals, support, and office staff.

C.   <u>Designating Party</u>. "Designating Party" means a Party or non-party person or entity, including a Producing Party (later defined), that designates Discovery Material as Protected Information.

D.   <u>Producing Party</u>. "Producing Party" means any Party or non-party person or entity that discloses or produces any Discovery Material in the Civil Action.

E.   <u>Receiving Party</u>. "Receiving Party" means any Party that requests or receives any Discovery Material in the Civil Action.

F.   <u>Expert</u>. "Expert" means a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its Outside Counsel to serve as an expert witness or as a consultant in this Civil Action. This definition includes a professional jury or trial consultant retained in connection with this litigation. For the avoidance of doubt, this definition of "Expert" excludes an officer, member, owner, or employee of a Party who serves as or is retained as an expert in this Civil Action.

G.   <u>Protected Information</u>. "Protected Information" means any Discovery Material that is designated as "CONFIDENTIAL" (later defined) or "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" (later defined), as provided in this Protective Order.

II. **DURATION; COMPUTATION OF TIME**

A.   <u>Duration of Protective Order</u>. Even after a final resolution or termination of the Civil Action, including by mediation or settlement, including all appeals, the confidentiality obligations imposed by this Protective Order shall remain in effect until a Designating Party agrees otherwise, in writing, or the Court directs otherwise.

B.   <u>Conformance with Federal Rules of Civil Procedure</u>. The computation of any period of time prescribed or allowed by this Protective Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6(a) and 6(d).

III.   **SCOPE OF PROTECTIVE ORDER**

A.    <u>Scope of Protection</u>. The protections conferred by this Protective Order shall cover all Protected Information, including any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or other compilations thereof. Such protections shall also extend to any pleadings, testimony, conversations, or presentations by any Party or its counsel that might discuss, reflect, or reveal Protected Information.

B.    <u>Other Proceedings</u>. By entering this Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or Party subject to this Protective Order who becomes subject to a motion to disclose another Party's information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" pursuant to this Protective Order shall promptly notify that Party of the motion so that the Party may have an opportunity to appear and be heard on whether that information should be disclosed.

C.    <u>Reservation of Rights</u>. Notwithstanding the provisions herein, nothing in this Protective Order shall prevent or restrict a Designating Party's disclosure or use of its own Protected Information for any purpose.

D.    <u>No Prejudice</u>. This Protective Order is entered into by the Parties without prejudice to the right of either Party to seek further or additional protection of any Discovery Material, or to seek to modify this Protective Order in any way.

IV.   **DESIGNATION, USE, AND DISCLOSURE OF PROTECTED INFORMATION**

A.    <u>Designation of Protected Information</u>. A designation of Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" constitutes a representation by the Designating Party that the Designating Party has a good faith, reasonable basis to believe that the Discovery Material so designated is, in fact, Protected Information appropriate for, and entitled to, confidential protection.

B.    <u>Exclusion of Protected Information</u>. The Designating Party shall *not* designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" any Discovery Material:

    i.    that is or has become publicly known through no fault of the Receiving Party;

    ii.   that was previously produced, disclosed, and/or provided to the Receiving Party by the Producing Party or a third-party person or entity without an obligation of confidentiality, not by inadvertence or mistake, and absent direct or indirect solicitation and/or indirect circumvention in breach of this Protective Order; or

    iii.  that was authorized to be produced, disclosed, and/or provided to the person or individual owning or controlling the Protected Information, which may be the Designating Party or

the Producing Party.

C.    <u>Designation of "CONFIDENTIAL" Discovery Material</u>. The Designating Party may designate and visibly mark as "CONFIDENTIAL":

    i.   any of the Designating Party's Discovery Material which the Designating Party believes contains non-public, confidential personal, commercial, financial, proprietary, trade secret, know-how, and design information; or

    ii.  confidential information of a third-party person or entity to whom the Designating Party owes an obligation of confidentiality.

D.    <u>Designation of "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY"</u> <u>Discovery Material</u>. The Designating Party may designate and visibly mark as "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY":

    i.   any Protected Data (as defined herein); and

    ii.  any Sensitive Information (as defined herein).

For the purpose of designation pursuant to the Protective Order, designating Discovery Material as "HIGHLY CONFIDENTIAL" or "AEO" shall constitute a designation as "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY."

E.    <u>Protected Data; Sensitive Information</u>. "Protected Data" and "Sensitive Information" are defined herein as follows:

    i.   <u>Protected Data</u>. "Protected Data" means any personally identifiable information (PII) or information that a Party believes to be subject to local, state, federal, or international data-protection laws or data-privacy regimes, including (without limitation): the Federal Trade Commission Act (FTCA), 5 U.S.C. §§ 41-58, as amended (personal information); the Gramm-Leach-Bliley Act (GLBA), 15 U.S.C. § 6801 et seq. (financial information); the Health Insurance Portability and Accountability Act (HIPAA) and the regulations thereunder, 45 C.F.R. Part 160 and Subparts A and E of Part 164 (health information); the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g (educational information); the General Data Protection Regulation (GDPR), identified as Regulation (EU) 2016/679 (European Union personal information); Personal Information Protection and Electronic Documents Act (PIPEDA), S.C. 2000, c. 5 (Canadian personal information); and the Federal Law on Protection of Personal Data held by Private Parties (published July 5, 2010) (Mexico personal information).

    ii.  <u>Sensitive Information</u>. "Sensitive Information" means:

        a.  the Parties' non-public financial information, as it relates to costs, revenues, and profits;

b.  Source Code;

c.  information or documents of a third party designated as "Highly Confidential Outside Attorney's Eyes Only," or designated "Confidential Business Information" of a third party in the 1067 Investigation or in the 1088 Investigation, unless the third party agrees that such documents may be designated "CONFIDENTIAL" under this protective order.

d.  such other information or documents, not otherwise excluded from a Highly Confidential designation, that the Parties agree in writing should be so designated.

F.  <u>Discovery produced or taken in the 1067 Investigation and the 1088 Investigation</u>. On entry of this Protective Order, discovery the Parties or their corporate affiliates produced in the 1067 Investigation and the 1088 Investigation with a confidentiality designation ("Confidential ITC Discovery"), will be treated as HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY under this Protective Order. After 90 days from entry of this order, any Confidential ITC Discovery originally produced with a designation of Confidential Business Information by the Parties or corporate affiliates of the Parties, such as Wirtgen GmbH, but excluding discovery produced by a third party, will be deemed designated CONFIDENTIAL under this Protective Order. If a Producing Party wishes to up-designate any Confidential ITC Discovery, it must provide for use in this Civil Action a replacement production or copies of any up-designated documents with the HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY designation, as well as a written identification of the up-designated documents.[1]

G.  <u>Disclosure of "CONFIDENTIAL" Discovery Material</u>. The Receiving Party shall not disclose Discovery Material designated as "CONFIDENTIAL," except to the following persons and entities:

i.  to up to three designated in-house counsel for the Receiving Party (the "Designated In-House Counsel");

ii.  to the Receiving Party's Outside Counsel and the Outside Counsel's attorneys, employees, contractors, and staff;

iii.  to Experts retained by the Receiving Party in connection with the Civil Action;

iv.  to court reporters and their staff, professional jury or trial consultants, mock jurors, and other professional vendors providing litigation-support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium, etc.), to whom disclosure is reasonably necessary

---

[1] Production of Wirtgen GmbH documents from the 1067 Investigation and the 1088 Investigation is not intended, nor should it be construed, as an agreement by Wirtgen America that discovery is appropriate and may be taken from Wirtgen GmbH, or as a waiver of any objection to, or protection from, the production, use, or admission into evidence of any production from Wirtgen GmbH. Caterpillar reserves all rights to seek discovery from Wirtgen GmbH by any means available to Caterpillar.

for the Civil Action;

    v.   to any Receiving Party witnesses for deposition or trial, or in preparation for deposition or trial, in the Civil Action, but only if the witness had previously sent, received, created, or reviewed the Protected Information; provided, however, that such witnesses shall not be sent copies of the Protected Information, nor may they retain such copies;

    vi.   to a witness for the Designating Party in deposition or trial in the Civil Action, but only if the witness is employed by the Designating Party or had previously sent, received, created, or reviewed the Protected Information;

    vii.   to the Court and its personnel, including the Clerk;

    viii.   to other persons or entities as may be designated by written stipulation of Outside Counsel for the Designating Party; and

    ix.   by specific order of the Court in this Civil Action.

H.    <u>Disclosure of "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" Discovery Material</u>. The Receiving Party shall not disclose Discovery material designated as "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY," except to the following persons and entities:

    i.   to the Receiving Party's Outside Counsel and the Outside Counsel's attorneys, employees, contractors, and staff;

    ii.   to Experts retained by the Receiving Party in connection with the Civil Action, but only to the extent deemed by the Receiving Party's Outside Counsel to be reasonably necessary for the proper representation of their clients in the Civil Action;

    iii.   to court reporters and their staff, professional jury or trial consultants, mock jurors, and other professional vendors providing litigation-support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium, etc.), to whom disclosure is reasonably necessary for the Civil Action;

    iv.   to any Receiving Party witnesses for deposition or trial, or in preparation for deposition or trial, in the Civil Action, but only if the witness had previously sent, received, created, or reviewed the Protected Information; provided, however, that such witnesses shall not be sent copies of the Protected Information, nor may they retain such copies;

    v.   to a witness for the Designating Party in deposition or trial in the Civil Action, but only if the witness is employed by the Designating Party or had previously sent, received, created, or reviewed the Protected Information;

    vi.   to the Court and its personnel, including the Clerk;

vii.  to other persons or entities as may be designated by written stipulation of counsel for the Designating Party; and

viii.  by specific order of the Court in this Civil Action.

I.  <u>Disclosure of Protected Data</u>. Certain Protected Data may compel alternative or additional protections for disclosure beyond those set forth in this Protective Order. To the extent certain Protected Data requires alternative or additional protections for disclosure, the Parties shall meet and confer in good faith to address or resolve said alternative or additional protections, and, if unsuccessful, shall move the Court for appropriate relief.

J.  <u>Limitation on Use</u>. Unless otherwise permitted by this Protective Order, all Discovery Material designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" shall **not** be disclosed or used:

i.  for any purpose other than for litigating, prosecuting, defending, settling, or attempting to settle the Civil Action; and

ii.  by any third-party person or entity, except as otherwise stated herein, unless there is an order of this Court to the contrary.

K.  <u>Outside Counsel's Ability to Advise Client</u>.  Nothing in this Order shall preclude or impede Outside Counsel's ability to communicate with or advise their client in connection with this litigation based on such counsel's review and evaluation of Protected Information, provided however, that such communications or advice shall not disclose or reveal the substance or content of any Protected Information other than as permitted under this Order.

L.  <u>In-House Redacted Copies</u>.  A Receiving Party may create and provide a redacted copy of any litigation materials containing another Party's HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY information (e.g. motions, briefs, filings, discovery responses, expert reports, deposition transcripts, etc.) to the Receiving Party's Designated In-House Counsel.  Such redacted copies need only redact HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY information of other Parties.

## V.  **PROSECUTION BAR**

A.  <u>Prosecution Bar</u>. Notwithstanding the provisions of Sections IV.F-G, no attorney, patent agent, Expert, or other person who subscribes to the Protective Order on behalf of a Party:

i.  may disclose any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" information to any counsel, patent agent, or other person who participates in the Patent Prosecution (defined below) of any patent application pertaining to cold planers, mixers, and/or road milling machines; or

ii.  may be involved in Patent Prosecution (defined below) relating to the subject matter of

cold planers, mixers, and/or road milling machines, before any foreign or domestic agency, including, but not limited to, the United States Patent and Trademark Office (USPTO) and the European Patent Office (EPO).

Collectively, Section V.A. shall be referred to as the "Prosecution Bar."

B.      No Imputation of Prosecution Bar. The Prosecution Bar is personal to any person subscribing to the Protective Order or Outside Counsel that actually receives CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY Discovery Material and shall not be imputed to any other person or entity.

C.      Termination of Prosecution Bar. These prohibitions shall end three years and six months (3.5 years) after the earlier of the final resolution or termination, including by mediation or settlement, of the Civil Action, including all appeals, except if an attorney, patent agent, Expert, or other individual who subscribes to the Protective Order is not involved an any appeal, the prohibition shall end three years and six months (3.5 years) after the earlier of the final resolution or termination of the Civil Action.

D.      Definition of Patent Prosecution. "Patent Prosecution" means substantive patent prosecution activities involving "competitive decision making," as set forth in *In re Deutsche Bank*, 605 F.3d 1373, 1378 (Fed. Cir. 2010), such as substantively supervising, assisting, or participating in (including advising on, consulting on, preparing, drafting, editing, amending, or otherwise prosecuting applications, claims, and responses to office actions) the prosecution of any pending or future patent application before the USPTO, any foreign patent office, or any other foreign or domestic agency, with respect to any patent application claiming (in whole or in part) the subject matter of: (a) cold planers, mixers, and/or road milling machines; or (b) any of the parents, grand-parents, or other predecessor applications in the chain, or descendants, of the patents-in suit. Notwithstanding the foregoing, "Patent Prosecution" shall not include representing a Party in, or otherwise participating in, interferences, reissue proceedings, *ex parte* reexamination, *inter partes* review, or post-grant review proceedings.

## VI.      ACCESS OF PROTECTED INFORMATION AND PROCEDURE FOR DISCLOSURE

A.      Access to Protected Information. Each person, including those acting on behalf of the Parties, given access to Discovery Material designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY," or information derived therefrom, shall be advised that Protected Information is being disclosed pursuant and subject to the terms of this Protective Order and may not be disclosed other than pursuant to the terms hereof. Each person identified in sections IV.F.i., iii., or v., or identified in sections IV.G.ii., or iv., to whom such Protected Information is to be provided shall be required to sign, prior to receiving the Protected Information, an agreement in the form attached hereto as "Exhibit A," the agreement of which shall be served on the Producing Party and any opposing Parties prior to disclosure of the Protected Information.

B.      Procedure for Disclosure of Protected Information to Designated In-House Counsel Under IV.F.i. Disclosure or production of Discovery Material designated "CONFIDENTIAL" to Designated In-House Counsel under IV.F.i must proceed in accordance with the procedure below:

   i.   Written Request. No less than seven (7) days prior to an initial disclosure of Protected Information to a Designated In-House Counsel, a Party seeking to disclose to a Designated In-House Counsel any Discovery Material that has been designated "CONFIDENTIAL" must make a written request to the Designating Party.

   ii.  Objection. A Party that makes a written request may disclose "CONFIDENTIAL" Discovery Material to the Designated In-House Counsel unless, within seven (7) days of delivering the written request, the requesting Party receives a written objection from the designating Party. Any such objection must set forth in detail the grounds on which it is based.

   iii. Meet and Confer. After a timely written objection, the Parties must meet and confer to try to resolve the matter by agreement within seven (7) days of the written request. If no agreement is reached, the designating Party may file a motion with the Court seeking a protective order preventing disclosure to the Designated In-House Counsel and will bear the burden of persuasion in preventing disclosure. In presenting the request for a protective order, the designating Party must follow the procedure outlined for "Discovery Matters" before Magistrate Judge Thynge, as set forth in D.I. 30. If the designating Party does not contact chambers to schedule a telephone conference on the motion for a protective order within seven (7) days from the Parties' meet and confer, the objection is deemed waived and Party seeking to disclose to a Designated In-House Counsel may do so.

C.      Procedure for Disclosure of Protected Information to Designated Experts Under IV.F.iii. or IV.G.ii. Disclosure or production of Discovery Material designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" to designated Experts under IV.F.iii. or IV.G.ii must proceed in accordance with the procedure below:

   i.   Written Request No less than seven (7) days prior to an initial disclosure of Protected Information to a designated Expert, a Party seeking to disclose to a designated Expert any Discovery Material that has been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL–OUTSIDE ATTORNEYS' EYES ONLY" must make a written request to the Designating Party that:

      a. sets forth the full name of the designated Expert, and the city and state of his or her primary residence;

      b. attaches a copy of the designated Expert's current resume or *curriculum vitae*;

      c. identifies the designated Expert's current employer(s), as applicable;

    d. identifies each person or entity from whom the designated Expert has received compensation or funding for work in his or her areas of expertise or to whom the designated Expert has provided professional services, including in connection with a litigation, at any time during the preceding five (5) years; and

    e. identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the designated Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five (5) years.

  ii. <u>Objection</u>. A Party that makes a written request and provides the information specified in the preceding respective paragraphs may disclose the "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" Discovery Material to the designated Expert unless, within seven (7) days of delivering the written request, the requesting Party receives a written objection from the designating Party. Any such objection must set forth in detail the grounds on which it is based.

  iii. <u>Meet and Confer</u>. After a timely written objection the Parties must meet and confer to try to resolve the matter by agreement within seven (7) days of the written request. If no agreement is reached, the designating party may file a motion with the Court seeking a protective order preventing disclosure to the designated Expert and will bear the burden of persuasion in preventing disclosure. In presenting the request for a protective order, the designating Party must follow the procedure outlined for Discovery Matters before Magistrate Judge Thynge, as set forth in D.I. 30. If the designating Party does not contact chambers to schedule a telephone conference on the motion for a protective order within seven (7) days from the Parties' meet and confer, the objection is deemed waived and Party seeking to disclose to a designated Expert may do so.

D.    <u>Procedure for Disclosure of Protected Information at Deposition</u>. Disclosure or production of Discovery Material designated "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL" during a deposition must proceed in accordance with the procedure below:

  i. <u>State on the Record</u>. Either Party's counsel may state on the record that the documents referred to or the testimony elicited constitutes Protected Information and that the transcript of that portion of the deposition should be filed in the manner prescribed below.

  ii. <u>Departure from Deposition Setting</u>. Either Party's counsel may request that any person who is not authorized to receive Protected Information leave the room during the confidential portion of the deposition. The failure of such other individuals to comply with a request of this type shall constitute substantial justification for the Party's counsel to advise the witness not to answer a question seeking revelation of Protected Information.

  iii. <u>Designation of Protected Information</u>. Either Party's counsel may also designate any portion of a deposition transcript as "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY." Such designation shall be made within twenty-one (21) days after receipt of the transcript. All information contained in the transcript shall be deemed Protected Information until the expiration of this twenty-one (21) day period.

## VII. FILING PROTECTED INFORMATION WITH THE COURT

A.      General Limitation on Filing Protected Information. Protected Information shall not be filed as a matter of course with the Court, but only when necessary for consideration by the Court or trier of fact and deemed by counsel to be necessary for the proper presentation of a pending motion, claim, defense, and/or resolution of the Civil Action.

B.      Filing under Seal. Any Protected Information submitted to the Court in connection with a motion, pleading, notice, or other filing shall be filed under seal. In connection with the foregoing, the filing Party shall publicly file a redacted version of said motion, pleading, notice, or other filing, along with a redacted version of any supporting papers (as applicable).

C.      Filing under Seal pursuant to CM/ECF and Scheduling Order. In accordance with D. Del. LR 5.1.3, Protected Information placed under seal must be filed in accordance with CM/ECF Procedures, unless otherwise ordered by the Court. In accordance with this Court's Scheduling Order, *see* D.I. 28, when filing papers under seal, counsel shall deliver to the Clerk of the Court the required numbers of copies as required in paragraph 6 of the Scheduling Order. A redacted version of any sealed document must be filed electronically within seven (7) days of the filing of the sealed document.

## VIII. CONFIDENTIAL SOURCE CODE

A.      Definition of Confidential Source Code. "Confidential Source Code" shall mean human-readable programming language text that defines software, firmware, microcode, or electronic-hardware descriptions. "Confidential Source Code" further includes, without limitation:

    i.      computer code, scripts, assembly, source code, object code, executable code, and source-code listings, object-code listings, executable-code listings, and descriptions of the foregoing (i.e., computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator);

    ii.      hardware description language (HDL), very high-speed integrated circuit (VHSIC) hardware description language (VHDL), register transfer level (RTL) files that describe the hardware design of any application-specific integrated circuit (ASIC) or other chip, or other similarly sensitive implementation details;

    iii.      files containing text written in "C," "C++," assembler, Verilog, and digital signal processor (DSP) programming languages;

    iv.      MATLAB code or other signal processing simulation code;

    v.   "include" files, "make" files, link files, and diffs, as well as source files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files;

   vi.  and other human-readable text files used in the generation and/or building of software executed on a processor, microprocessor, microcontroller, or DSP, including (without limitation), programmer notes, annotations, and other comments of any type related thereto and accompanying the code.

B.    <u>Relationship to Protected Information</u>. Confidential Source Code is a form of, and shall be afforded all of the same protections as, Protected Information, unless otherwise provided for by the Designating Party. For the avoidance of doubt, the restrictions herein on Confidential Source Code do not apply to publicly available source code available as open source code. To the extent production or disclosure of Confidential Source Code is required, the Designating Party may designate the Confidential Source Code as "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY," and the Requesting Party must take all required actions in connection with the "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" designation, unless otherwise provided for herein.

C.   <u>Handling of Confidential Source Code</u>. The following provisions shall govern the production, disclosure, receipt, inspection, and/or view of Confidential Source Code:

    i.   <u>Availability of Confidential Source Code</u>. All Confidential Source Code shall be made available electronically and in native form, or in a form kept in the normal course of business, by the Producing Party to the Receiving Party in a secure room, on at least one secured, reasonably current stand-alone computer at a secure location in Wilmington, DE, at one of the offices of counsel for the Producing Party, or other mutually agreeable location. The stand-alone computer must run a reasonably current version of the Microsoft Windows, Macintosh, or Unix operating system, and have reasonably sufficient RAM and other resources. The stand-alone computer will not have Internet access or network access to other computers, and all access ports on which have been disabled except one port for a printer, as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal, or other transfer of any Confidential Source Code outside or away from the computer on which the Confidential Source Code is provided for inspection (hereinafter, the "Confidential Source Code Computer"). If it should be necessary, the Confidential Source Code Computer may be configured by the Producing Party to run other mutually agreed upon operating systems.

   ii.  <u>Access to Confidential Source Code Computer</u>. No more than a total of eight (8) persons identified by the Receiving Party shall have access to the secure room in which the Producing Party produced its Confidential Source Code. If additional persons from the Receiving Party—beyond 8—require access to the secure room, for the review of Confidential Source Code belonging to the Producing Party, access will be granted upon a reasonable and justifiable request. Proper identification of all authorized persons shall be provided prior to any access to the secure room or the Confidential Source Code Computer. Proper identification requires showing, at a minimum, a photo identification

card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Confidential Source Code Computer may be denied, at the discretion of the Producing Party, to any person who fails to provide proper identification.

iii.   <u>Notice to Access the Confidential Source Code Computer</u>. The Receiving Party shall provide the Producing Party at least three (3) days' notice to access the Confidential Source Code at the Confidential Source Code Computer. The Confidential Source Code Computer shall be made available from 9:00 a.m. to 5:00 p.m. local time, Monday through Friday (excluding holidays), and other days and/or times, including weekends, upon reasonable request, until the decision in the Civil Action becomes final, or should a final decision be appealed by any Party to the Civil Action, upon the completion of all appeals herein. Beginning one week prior to the beginning of trial and continuing through the end of trial, if requested in advance, access to Confidential Source Code shall be provided, under the same conditions and with the same limitations and restrictions as provided in of this Protective Order, at a secure location in Wilmington, DE, at one of the offices of Outside Counsel for the Producing Party, or other mutually agreeable location.

iv.   <u>Tools to View and Search Confidential Source Code</u>. The Producing Party shall install tools that are sufficient for viewing and searching the Confidential Source Code, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's Outside Counsel and/or Experts may request that commercially available software tools for viewing and searching Confidential Source Code be installed on the secured computer; provided, however, that such other software tools are reasonably necessary for the Receiving Party to perform its review of the Confidential Source Code consistent with all the protections herein and are provided at the expense of the Receiving Party. Specific tools may include: SciTools Understand, Notepad++, Beyond Compare, XCode tools, Visual Slick Edit, Source-Navigator, PowerGrep, ExamDiffPro, Matlab, Simulink, or Sigasi, or other similar programs. Additional tools for review of the Confidential Source Code may be used by the Receiving Party, provided the Producing Party agrees and good cause is shown. The Receiving Party must provide the Producing Party with the CD, DVD, or download link, and license credentials at least five (5) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Confidential Source Code Computer.

v.   <u>Benchmarking the Confidential Source Code</u>. In order to verify that the Producing Party's Confidential Source Code has not later been altered, the Producing Party may benchmark the materials to confirm that the materials have not been altered before and after they are provided, but the Producing Party shall not install any keystroke or other monitoring software on the Confidential Source Code Computer.

vi.   <u>Monitoring by the Producing Party</u>. The Producing Party may visually, but not otherwise, monitor the activities of the Receiving Party's representatives and other authorized

persons during any Confidential Source Code review, but only to ensure that no unauthorized electronic records of the Confidential Source Code and that no unauthorized information concerning the Confidential Source Code is being created or transmitted in any way.

vii.  <u>Inspection by an Expert</u>. No less than seven (7) days prior to an initial inspection of Confidential Source Code by a designated Expert, a Party seeking to disclose to a designated Expert any Confidential Source Code must provide notice to the designating Party that:

    a.  states that the Expert intends to inspect or review the Confidential Source Code;

    b.  sets forth the full name of the designated Expert, and the city and state of his or her primary residence;

    c.  attaches a copy of the designated Expert's current resume;

    d.  identifies the designated Expert's current employer(s), as applicable;

    e.  identifies each person or entity from whom the designated Expert has received compensation or funding for work in his or her areas of expertise or to whom the designated Expert has provided professional services, including in connection with a litigation, at any time during the preceding five (5) years; and

    f.  identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the designated Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five (5) years.

D.  <u>Review of and Notetaking on Confidential Source Code</u>.

i.  <u>Authorized Notetaking</u>. During review of Confidential Source Code at the Confidential Source Code Computer, the Receiving Party and the authorized persons shall be entitled to take notes relating to the Confidential Source Code but may not copy the Confidential Source Code into the notes. No copies of all or any portion of the Confidential Source Code may leave the room in which the Confidential Source Code is inspected except as otherwise provided herein. Further, no other written electronic record of the Confidential Source Code is permitted except as otherwise provided herein.

ii.  <u>Authorized Laptop Computer</u>. In addition to the Confidential Source Code Computer and printer provided by the Producing Party (as discussed below), one laptop computer may be brought in to the secure room for the sole purpose of typing notes related to review of the Confidential Source Code; provided, however, that the laptop's photo- and video-recording capabilities are disabled during the review, the laptop's wireless and Wi-Fi capabilities are disabled during the review, the laptop is not connected to the Confidential Source Computer in any way, and such notes are treated as "HIGHLY

14

CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" under the Protective Order. No other electronic devices shall be permitted in the secure room, including but not limited to laptops, tablets, portable digital assistants (PDAs), thumb drives, zip drives, cellular telephones (including smart phones), cameras, voice recorders, dicta-phones, or telephone jacks, nor shall any non-electronic devices capable of similar functionality be permitted in the secure room.

iii. <u>Prohibited Copying, Removing, or Transferring of Confidential Source Code</u>. Except as provided for herein, the Receiving Party and authorized persons will not copy, remove, or otherwise transfer any Confidential Source Code from the Confidential Source Code Computer including, without limitation, copying, removing, or transferring the Confidential Source Code onto any recordable media or recordable device, including without limitation sound recorders, computers, tablets, cellular telephones (including smart phones), peripheral equipment, cameras, CDs, DVDs, or drives of any kind. The Receiving Party will not transmit any Confidential Source Code in any way from the Producing Party's or its Outside Counsel's secure room.

E. <u>Authorized Printing of Confidential Source Code</u>. The Confidential Source Code Computer shall be equipped with a high-speed laser printer (with commercially reasonable printing speeds) to print copies of the Confidential Source Code on watermarked pre-Bates numbered paper, which shall be provided by the Producing Party. Alternatively, the Producing Party may provide a folder on the Source Code Computer for the Reviewing Party to save screen shots and PDF copies of source code for printing at the conclusion of the review. The following provisions govern the use of the printer in connection with the Confidential Source Code:

i. <u>Printing Limited Portions of Confidential Source Code</u>. The Receiving Party may print limited portions of the Confidential Source Code only when reasonably necessary to facilitate the Receiving Party's preparation of filings with the Court, expert reports, and trial exhibits, and shall print only such portions as are relevant to the claims and defenses in the case and are reasonably necessary for such purpose. The Receiving Party shall not print Confidential Source Code in order to review blocks of Confidential Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Confidential Source Code electronically on the Confidential Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere.

ii. <u>Originals and Copies</u>. Outside Counsel for the Producing Party will keep the originals of the printouts of the Confidential Source Code, and copies shall be made for and delivered to Outside Counsel for the Receiving Party on water-marked paper within three (3) days of the printing. The Receiving Party's Outside Counsel may make no more than ten (10) additional paper copies of any portions of the Confidential Source Code received from a Producing Party, not including copies attached to court filings or used at depositions.

iii. <u>Electronic Copies; Transmission</u>. Except as provided herein, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Confidential Source Code

from any paper copy of Confidential Source Code for use in any manner, including, by way of example only, the Receiving Party may not scan the Confidential Source Code to a PDF or photograph the Confidential Source Code.

iv. <u>Reasonably Necessary Use</u>. Images or copies of Confidential Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings, motions, notices, exhibits, and other papers whenever possible. However, to the extent Confidential Source Code is included in pleadings, motions, notices, exhibits, and other papers, the Parties agree:

   a. to use no more Confidential Source Code in such pleadings, motions, notices, exhibits, and other papers than is reasonably necessary to accomplish the purpose for which such Confidential Source Code is being relied upon; and

   b. if Confidential Source Code, to be cited in such pleadings, motions, notices, or other papers, exceeds twenty-five (25) lines of code, then the Confidential Source Code must be attached in an exhibit rather than embedded in a body of a pleading, motion, notice, or other paper.

v. <u>Safety and Security of Printed Copies</u>. In addition to other reasonable steps to maintain the security and confidentiality of the Producing Party's Confidential Source Code, when not in use, printed copies of the Confidential Source Code maintained by the Receiving Party must be kept in a secure location to which only persons identified in Section IV.G.i. have access.

vi. <u>Objections to Printing</u>. If the Producing Party objects that the printed portions are excessive and/or the Receiving Party has not used the printed portions of the Confidential Source Code for a permitted purpose herein, the Producing Party shall make such objection known to the Receiving Party within three (3) days. Printed portions which exceed fifty (50) continuous pages shall be rebuttably presumed excessive and not done for a permitted purpose. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Producing Party shall be entitled to seek the Court's resolution of whether the printed Confidential Source Code in question is narrowly tailored and was printed for a permitted purpose. The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.

F. <u>After Inspection of Confidential Source Code</u>. Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is effectuated pursuant to the terms of this Protective Order, the Receiving Party's Outside Counsel, Experts, and authorized persons shall remove all notes, documents, and all other materials from the secure room. The Producing Party shall not be responsible for any items left in the secure room following each inspection session.

G. <u>Access Log</u>. The Receiving Party shall maintain an access log to the Confidential Source Code

(hereinafter, the "Access Log"), identifying each hard copy of Confidential Source Code it has in its possession. The Access Log is subject to the following provisions:

    i.  <u>Identification of Persons Accessing the Confidential Source Code</u>. For the initial time in which any authorized person accesses the hard copy of the Confidential Source Code, the following must be recorded in the Access Log:

        a.  name of each authorized person who viewed the Confidential Source Code; and

        b.  date and time of access.

    ii.  <u>Identification of Portion(s) of Confidential Source Code</u>. The Access Log shall also identify whether any, and if so what, portion of the Confidential Source Code was copied and how many copies were made.

    iii.  <u>Identification of Counsel</u>. The Access Log shall also identify, by name, the lawyer (or counsel), Expert, or authorized person bound by the provisions of this Protective Order assigned to each copy of the Confidential Source Code.

    iv.  <u>Service of Access Log</u>. Within thirty (30) days after the decision in the Civil Action becomes final, or should a final decision be appealed by any Party to the Civil Action, upon the completion of all appeals herein, counsel for the Receiving Party shall serve upon the Producing Party the Access Log.

H.  <u>Certification of Return or Destruction</u>. All persons to whom the paper copies of the Confidential Source Code were provided must certify, in writing:

    i.  that all copies of the Confidential Source Code were returned to counsel for the Producing Party or otherwise destroyed;

    ii.  that all notes taken regarding the Confidential Source Code were erased, if in electronic form, or destroyed, if in written form; and

    iii.  that the persons will not make use of the Confidential Source Code or of any knowledge gained from the Confidential Source Code in any future endeavor.

## IX.  **OBJECTIONS, PRIVILEGE, IMMUNITY, AND WAIVER**

A.  <u>Objection to Designation</u>. The Receiving Party may object, in writing, to the designation of any Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" by the Designating Party. If the Receiving Party objects, in writing, to the designation of the Discovery Material as Protected Information, the Receiving Party shall meet and confer with the Designating Party within seven (7) days of such objection to resolve the dispute. Thereafter, if the Parties are unable to reach an agreement on the designation of the Discovery Material, the Receiving Party shall have the burden of filing a motion with the Court for a determination of whether such material is "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" within thirty (30) days following the Receiving Party's objection, in writing.

B.      Privilege and Immunity. Pursuant to and consistent with Federal Rule of Evidence 502(d), if Protected Information or any other Discovery Material subject to a claim of attorney-client privilege, work-product immunity, or any other relevant privilege or immunity under relevant case law and rules, production of which should not have been made to any Party, is inadvertently produced to such Party, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege, work product, or any other ground for withholding production to which any Party producing the documents or information would otherwise be entitled. In the event that the Receiving Party discovers that it has received either attorney-client privilege or work-product documents or materials, it will bring that fact to the attention of the Producing Party promptly upon discovery. Any such inadvertently produced materials shall be returned promptly to the Producing Party upon request and all copies destroyed upon request, and no use thereof shall be made by the Party to whom such documents or information were inadvertently produced, except to the extent necessary to present the issues concerning privilege to the Court in this Civil Action.

C.      Objection to Privilege or Immunity. Nothing herein shall prevent the Receiving Party from objecting to the propriety of a claim for attorney-client privilege, work-product immunity, or other applicable privilege or immunity designation by the Producing Party. If the Receiving Party objects, in writing, to the designation of the Discovery Material as privileged or immune, the Receiving Party shall meet and confer with the Producing Party within seven (7) days of such objection to resolve the dispute. Thereafter, if the Parties are unable to reach an agreement on the designation of the Discovery Material, the Receiving Party shall have the burden of filing a motion with the Court for a determination of whether such material is privileged or immune within thirty (30) days following the Receiving Party's objection, in writing.

D.      No Waiver. Inadvertent or unintentional failure by the Producing Party to designate Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY" in accordance with the terms and provisions of this Protective Order shall not constitute a waiver by any Party of the right to designate the Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY." Counsel, upon notification of the designation, must make timely reasonable efforts to assure the material is treated in accordance with the provisions of this Protective Order.

X.      **FINAL DISPOSITION OF THE CIVIL ACTION**

A.      Return or Destruction of Protected Information. Promptly, but in no event greater than thirty (30) days after the decision in the Civil Action becomes final, or should a final decision be appealed by any Party to the Civil Action, upon the completion of all appeals herein, all Protected Information, whether designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," including all copies, abstracts, compilations, summaries, memorandums, pleadings, court documents, or transcripts reproducing or capturing any of the Protected Information, shall be, at the sole election of the Producing Party, either returned to the Producing Party, at the Producing Party's expense, or destroyed. In either event,

the returning or destroying Party shall certify, in writing, to the Producing Party that the return or destruction has been completed. Notwithstanding the foregoing, Outside Counsel are entitled to retain archival copies of all pleadings, motions, transcripts, memoranda, correspondence, attorney work-product, or any other Discovery Material, even if the foregoing contain Protected Information.

## XI.   **BREACH OF THE PROTECTIVE ORDER**

A.   <u>Injunctive Relief</u>. In the event any Party or person breaches or violates, or threaten to breach or violate, any terms of this Protective Order, the non-breaching Party may immediately apply to obtain injunctive relief against any such Party or person breaching or violating, or threatening to breach or violate, the terms of this Protective Order. In the event the non-breaching Party or person makes such an application for injunctive relief, the breaching Party or person subject to the provisions of this Protective Order shall not be able to assert, as a defense, that there is an adequate remedy at law other than equitable relief.

B.   <u>Sanctions; Other Remedies</u>. Any breach or violation of this Protective Order shall subject the breaching Party or person to sanctions by the Court. This Protective Order shall not be construed as an exclusive remedy or as a waiver of the non-breaching Party's right to seek further redress for a breach of this Protective Order.

## XII.   **CONSTRUCTION**

A.   <u>Non-Prejudice; Non-Waiver; Construction</u>. The Protective Order shall not be construed:

  i.   to broaden the permissible scope of discovery in the Civil Action;

  ii.   as a waiver of either Party's right to object to the furnishing of discovery in the Civil Action;

  iii.   as an admission by any Party that any Discovery Material comprises, contains, or reflects the Protected Information; or

  iv.   to prejudice either Party's right to apply to this Court for a modified or amended protective order.

B.   <u>Construction with 1067 Investigation</u>. The terms and conditions of the Protective Order herein are not, nor are they intended to be, less restrictive than the protective order governing the production and use of discovery in the 1067 Investigation, the protective order of which is hereby attached to this Protective Order as Exhibit B. Ambiguities, inconsistencies, or conflicts in this Protective Order shall not be construed against either Party, but will be resolved by applying a reasonable interpretation, giving full considerations to the Parties' intentions and in a manner that is not less restrictive than the protective order governing the 1067 Investigation.

C.   <u>Headings</u>.  The headings herein are for purposes of reference only and shall not otherwise affect the meaning or interpretation of any provision hereof.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

**YOUNG CONAWAY STARGATT &**          **POTTER ANDERSON & CORROON, LLP**
**TAYLOR, LLP**

*/s/ Adam W. Poff*                    */s/ Bindu A. Palapura*
Adam W. Poff (No. 3990)               Bindu A. Palapura (No. 5370)
Rodney Square                         Hercules Plaza, 6th Floor
1000 North King Street                1313 N. Market Street
Wilmington, DE 19801                  Wilmington, DE 19801
(302) 571-6600                        (302) 984-6000
apoff@ycst.com                        bpalapura@potteranderson.com

*Attorneys for Plaintiff*             *Attorneys for Defendant*

Dated:  November 1, 2021

 **PURSUANT TO STIPULATION, IT IS HEREBY ORDERED** that the Protective
Order be entered.

Dated: _____            _____
                                          Richard G. Andrews
                                          United States District Judge

## NONDISCLOSURE AGREEMENT

### Exhibit A to [PROPOSED] Stipulated Protective Order

I, _____ [name], declare as follows:

1.  I am currently a/an _____ [job title/position]
    with _____ [employer/contractor], having an address of
    _____ [address of employer/contractor].

2.  My current primary address is _____.

3.  I understand that non-public, confidential, and proprietary documents, information, materials, and/or things ("Protected Information") are being provided and disclosed to me solely in connection with a civil action at the United States District Court for the District of Delaware, identified and captioned as *Wirtgen America, Inc. v. Caterpillar Inc.*, Civil Action No. 17-770-RGA ("Civil Action").

4.  I acknowledge receipt of a copy of the Stipulated Protective Order ("Protective Order"), to which this Exhibit A is attached, between the parties in the above-captioned Civil Action.

5.  I have been advised that the Protected Information may **not** be disclosed or used for any purpose *other than* in connection with my acting as counsel, an expert, consultant, witness, or other authorized recipient in the Civil Action.

6.  I have been advised that any unauthorized use or disclosure of such Protected Information may subject me to sanctions by the Court, and I submit myself to the jurisdiction of the above-referenced Court with regard to any dispute regarding my use or disclosure of such Protected Information or any breach or violation of the Protective Order.

7.  Upon request by counsel, or upon the conclusion of the Civil Action, I will return (or destroy) all Protected Information that comes into my possession to the counsel who provided it to me.

I declare, certify, verify, and state, under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed this _____ day of _____ 20____, in _____.

_____
Signature

_____
Name

28766152.1