IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**WIRTGEN AMERICA, INC.,**

*Plaintiff,*

v.

**CATERPILLAR, INC.,**

*Defendant.*

**Case No. 1:17-cv-00770-JDW-MPT**

<u>**MEMORANDUM**</u>

In this patent litigation, Wirtgen America, Inc. and Caterpillar, Inc. seek to exclude certain expert testimony before trial. I'll exclude the testimony of Caterpillar's ITC expert because his opinion wouldn't help the jury in determining willfulness and one of Wirtgen's experts whose doctrine of equivalents theory is conclusory and therefore unreliable.

**I.      LEGAL STANDARD**

Regional circuit law governs aspects of expert opinion admissibility, unless the issues are unique to patent law. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390 (Fed. Cir. 2003). A district court has wide discretion in determining whether to admit expert testimony. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). Federal Rule of Evidence 702 provides that a qualified expert may testify in the form of an opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on

sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. Rule 702's requirements establish "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

Regarding the reliability requirement, Rule 702 mandates that the relevant expert testimony "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). "While 'the focus, of course, must be solely on principles and methodology, not on the conclusions that they generate,' ... a district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999) (quoting *Daubert*, 509 U.S. at 595). When there's "too great a gap between the data and the opinion proffered[,]" a court may conclude that the expert testimony isn't reliable. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000).

As to fit, the expert testimony should assist the trier of fact in determining a fact in issue. *See Daubert*, 509 U.S. at 591. The expert's opinion must relate to a "pertinent inquiry" of the case. *Id.* Otherwise, that testimony "is not relevant and, ergo, non-helpful."

2

*Id.* (citation omitted). While the standard for "fit" is "not that high[,]" the bar is "higher than bare relevance." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

The party offering the expert's opinion bears the burden of proving that it meets Rule 702's restrictions. *See id.* at 744. While the party must make more than a *prima facie* showing that an expert's methodology is reliable, "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." *Pineda*, 520 F.3d at 247. Rule 702 "has a liberal policy of admissibility." *Id.* at 243 (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).

## II. ANALYSIS

Contemporaneous with their cross-motions for summary judgment, the Parties filed *Daubert* motions. (*See* D.I. 210, 217.) Wirtgen moves to exclude a single expert, Paul Bartkowski. Caterpillar moves to exclude various aspects of multiple experts' opinions. As the Parties did in their briefs, I will address Mr. Bartkowski first and then the categories of information that Caterpillar seeks to exclude.[1]

### A. Paul Bartkowski

On July 19, 2017, Wirtgen filed a complaint with the ITC, claiming infringement of five of the twelve patents in Wirtgen's initial complaint in this case. The ITC found infringement for three patents and issued a limited exclusion order, which the Federal

---

[1] Caterpillar has moved to exclude the testimony of Wirtgen's damages expert, Dr. Pallavi Seth. I have scheduled a hearing on that aspect of the Motion and will rule after that hearing. I therefore do not address Dr. Seth's testimony in this Memorandum.

Circuit affirmed in part. *See Caterpillar Prodotti Stradali S.R.L. v. Int'l Trade Comm'n*, 847 Fed. App'x 893, 894 (Fed. Cir. 2021) (affirming infringement findings for the '530 and '309 Patents).[2] On remand, the ITC issued a modified exclusion order to include the '641 Patent.[3]

Caterpillar offers Mr. Bartkowski to opine on how the ITC works and the ITC litigation between Wirtgen and Caterpillar, including their respective claims and defenses. In explaining the ITC proceedings to the jury, he will opine that Caterpillar's defense before the ITC was "not without merit." (D.I. 229-23 at ¶ 183.) He reaches that conclusion based on his assessment of the outcome of the various invalidity defenses that Caterpillar offered in the ITC proceeding. He also opines that Caterpillar's redesigns are "indicative of a party that vigorously presented meritorious defenses to infringement allegations (and infringement findings)." (*Id.* ¶ 200.)

Mr. Bartkowski's testimony about the ITC proceedings doesn't meet *Daubert*'s fit requirement. *See Daubert*, 509 U.S. at 591. The prior litigation before the ITC is relevant in a jury's determination of willfulness because the jury will measure Caterpillar's culpability "against [its] knowledge … at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). And Wirtgen accuses Caterpillar of continuing to infringe on Wirtgen's patents after it was put on notice of infringement

---

[2] U.S. Patent Nos. 9,656,530, and 7,828,309, respectively.
[3] U.S. Patent No. 7,530,641.

during the ITC litigation. While the ITC litigation is relevant, it doesn't automatically follow that Mr. Bartkowski's opinion "will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. The standard for "fit" is "higher than bare relevance." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 745.

What matters for the jury is Caterpillar's state of mind from a subjective (as opposed to objective) standpoint. "[S]ubjective willfulness alone" can support an award of enhanced damages. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (citing *Halo Elecs., Inc.*, 579 U.S. 93). The jury will need to evaluate if Caterpillar "acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer." *Id.* (internal quotations omitted).

Mr. Bartkowski has no knowledge about Caterpillar's subjective state of mind, nor can an expert offer an opinion about a party's subjective state of mind. *See Shire Viropharma Inc. v. CSL Behring LLC*, No. CV 17-414, 2021 WL 1227097, at *5 (D. Del. Mar. 31, 2021). To the extent that Mr. Bartkowski intends to point to objective facts—like Caterpillar prevailing on some arguments before the ITC—as evidence of its state of mind, that's nothing more than lawyer argument. It's not expert analysis. Rules 702 and 703 do not permit parties to cloak attorney argument in the guise of expert testimony.

And Caterpillar has not explained how Mr. Bartkowski's summary of the procedures before the ITC that led to the ITC's decision will aid the jury in assessing Caterpillar's state of mind. Caterpillar cites to *Atturo Tire Corp.,* but that case is distinguishable. In *Atturo*

*Tire Corp.*, a district judge permitted an expert in ITC litigation to testify about the ITC's procedures for terminating a respondent in an ITC investigation based on a settlement agreement and whether those procedures were followed in a particular case. *See Atturo Tire Corp. v. Toyo Tire Corp.*, No. 14-CV-0206, 2021 WL 3814800, at *2 (N.D. Ill. Aug. 26, 2021). Unlike Mr. Bartkowski's testimony, that expert's opinion aided the jury in resolving a fact at issue. The jury had to decide the merits of certain claims that arose from a party's alleged wrongful conduct in resolving an ITC investigation. Thus, an understanding of the ITC's idiosyncratic procedures would help the jury determine whether those procedures were followed. Here, that's not the jury's task. I will therefore exclude Mr. Bartkowski's testimony.

### B. Wirtgen's Experts

Caterpillar seeks to exclude testimony from Drs. John Meyer, John Lumkes, and Christopher Rahn in three different categories: (1) Wirtgen-branded machines practice Wirtgen's patents; (2) Caterpillar's mental state; and (3) the doctrine of equivalents.

#### 1. Whether Wirtgen-branded machines practice Wirtgen's patents

Dr. Meyer intends to opine that Wirtgen's machines practices claims of the '641 Patent, and Dr. Lumkes intends to opine that those machines practice claims of the '530 and '309 Patents. Caterpillar argues that neither disclosed the basis for his opinions in his expert report and therefore seeks to exclude those opinions. (Caterpillar also seeks

to preclude Dr. Rahn from offering similar opinions, but Wirtgen says he won't do so, so there's nothing for me to resolve with respect to Dr. Rahn.)

<u>Dr. Meyer</u>. Dr. Meyer bases his opinion on analysis that he performed during the ITC proceeding. In an appendix to his expert report, he cites his report from the ITC proceeding among the materials he considered. There's no dispute that Caterpillar has Dr. Meyer's expert report from the ITC proceeding. Wirtgen even re-produced it in this case. To the extent his expert report in this case was not clear, Dr. Meyer clarified in his deposition that he based his opinion in this case on his analysis and report in the ITC proceeding. That's sufficient to satisfy Rule 26 which requires that his report provide "a complete statement of all opinions [he] will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i).

<u>Dr. Lumkes</u>. Unlike Dr. Meyer, Dr. Lumkes doesn't disclose the basis of his opinion about the Wirtgen-branded machines anywhere in his report. In its responsive brief, Wirtgen references Dr. Lumkes's prior work during the ITC litigation. But Wirtgen doesn't point me to where Dr. Lumkes cited that work in his expert report. Rule 26 requires that Dr. Lumkes's report list the basis for that opinion, or at least that he disclosed it to Caterpillar somewhere along the way. *See id.*

While Dr. Lumkes didn't comply with Rule 26, I won't strike this portion of his opinion. Caterpillar classifies its Motion as a *Daubert* motion, but because it's asking me to find a violation of Rule 26(a), I analyze this argument as a motion to strike under Rule

37. Rule 37 bars the admission of information that a party didn't disclose properly "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). When a party seeks to strike untimely disclosed facts, witnesses, or opinions, a court will evaluate the *Pennypack* factors. *See Intervet, Inc. v. Mileutis Ltd.*, No. CV 15-1371 (ZNQ), 2023 WL 2266411, at *5 (D.N.J. Feb. 28, 2023). In this case, the issue isn't that Wirtgen disclosed Dr. Lumkes's opinion in an untimely manner. Rather, it's the absence of the basis for a portion of his opinion in his timely expert report. Even so, I still find the *Pennypack* factors instructive. Because striking critical evidence is an "extreme sanction," my discretion to do so isn't unlimited. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297 (3d Cir. 2012). Those factors appropriately weigh the countervailing issues I must consider in determining if Wirtgen's failure was harmless.

Per *Pennypack*, I will consider the following factors: "(1) 'the prejudice or surprise in fact of the party against whom' … the excluded evidence would have been offered; (2) 'the ability of that party to cure the prejudice'; (3) the extent to which allowing such … evidence would 'disrupt the orderly and efficient trial of the case …'; (4) any 'bad faith or willfulness in failing to comply with the court's order'; and (5) the importance of the excluded evidence." *Id.* at 298 (citation omitted). Analyzing the first two factors together, Caterpillar wouldn't have been surprised and there was ample opportunity to cure. That the Wirtgen machines practice the asserted patents was a jurisdictional requirement for the ITC to hear the prior case. Dr. Lumkes, in that litigation, opined as such. When

8

Caterpillar received Dr. Lumkes's opening report on May 18, 2023, it wasn't shocking that Dr. Lumkes reached the same conclusion. Dr. Lumkes didn't cite the basis for that opinion, but the omission wasn't prejudicial to Caterpillar because Caterpillar had the opportunity to and did depose Dr. Lumkes. *See Withrow v. Spears*, 967 F. Supp. 2d 982, 1005 (D. Del. 2013) (noting that the opportunity to depose an expert can cure prejudice). If Caterpillar wanted to drill down on why or how Dr. Lumkes reached that conclusion, it had a chance at the deposition to do so. The other factors also weigh against striking Dr. Lumkes's opinion. There's no need to re-open discovery and delay the trial because Caterpillar had Dr. Lumkes's report when he was deposed. There's no bad faith on Wirtgen's part, and this evidence is important because it impacts Wirtgen's damages theory.

The purpose of Rule 26 is to prevent unfair surprise by the presentation of new evidence. *See EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 92 (D. Del. 2016). Nothing that Wirtgen is doing will be a surprise to Caterpillar, given the history between the parties. Therefore, I won't exclude Dr. Lumkes's opinion that Wirtgen-branded machines practice claims of the '530 and '309 Patents.

### 2. Caterpillar's mental state

Both Dr. Meyer and Dr. Lumkes point to evidence of Caterpillar copying features of Wirtgen's machines to bolster their respective conclusions that Wirtgen's inventions were not obvious. (*See* D.I. 213-8 at ¶ 189, D.I. 213-10 at ¶ 8.) An obviousness inquiry can include an examination of secondary considerations, including commercial success. *See*

9

*MeadWestVaco Corp. v. Rexam Beuaty and Closures, Inc.*, 731 F.3d 1258, 1263-64 (Fed. Cir. 2013). Courts permit experts to testify on obviousness or nonobviousness, including secondary considerations. *See, e.g.*, *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 985 (Fed. Cir. 2009) (noting that trial court permitted expert testimony on secondary consideration of nonobviousness). Caterpillar hasn't offered any reason why I should prevent Drs. Meyer and Lumkes from doing the same.

The Parties' briefing directed to these opinions is puzzling. Caterpillar argues that Drs. Meyer and Lumkes cannot opine that Caterpillar copied Wirtgen's products, and Wirtgen defends their right to do so. They both frame the discussion in relation to Wirtgen's claim of willfulness. But from the excerpts of the experts' reports, I don't see that either expert has disclosed an intent to offer such an opinion. It's therefore not clear to me that there's any dispute for me to resolve. To the extent either expert intends to go beyond what he's disclosed in his expert report or to offer an opinion that arguably goes beyond what Rule 702 requires, I can address it at trial.

### 3. Doctrine of equivalents

Drs. Meyer, Lumkes, and Rahn each offer opinions to invoke the doctrine of equivalents, suggesting that differences between Caterpillar's machines and claims in Wirtgen's patents are insubstantial. Caterpillar contends that those expert opinions are conclusory and thus unreliable. It's proper to exclude expert testimony when there's "too great a gap between the data and the opinion proffered." *Oddi*, 234 F.3d at 146.

"Expert reports must not contain mere conclusory opinions, but must include 'how' and 'why' the expert reached those particular conclusions." *Simpson v. Betteroads Asphalt Corp.*, No. CIVIL 2011-056, 2013 WL 2255472, at *2 (D.V.I. May 18, 2013) (citation omitted).

A product that doesn't literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an element of the accused product and a claim limitation are insubstantial. *See Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1351 (Fed. Cir. 2003). A finding of infringement under the doctrine of equivalents requires "a showing that the difference between the claimed invention and the accused product … was insubstantial or that the accused product … performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product …." *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

<u>Dr. Lumkes</u>. Dr. Lumkes opines that the differences between a track assembly and a wheel are insubstantial because "[b]oth are used to move a machine, would be connected to the hydraulic traction system in substantially the same way, and would be connected to the [lifting] column in substantially the same way." (DI. 213-10 at ¶ 144.) He further opines that the "track assemblies … perform substantially the same function (engage the ground surface) in substantially the same way (hydraulically powered to rotate) to achieve substantially the same result (the machine moves) as a wheel." (*Id.*)

Neither his "insubstantial-difference" nor "function-way-result" opinion is conclusory. Rather, Dr. Lumkes provides reasons why the differences aren't meaningful. He also specifies and describes a relevant function, way, and result. Given this, there's enough to draw a link between his conclusion and the data he used to get there. *See Heller*, 167 F.3d at 153.

      Dr. Rahn. Dr. Rahn opines that the difference between a "single display indicating the current actual values with selection buttons to set a value for an operating parameter and (ii) two separate displays indicating the current actual values with section buttons to set a value for an operating parameters" is insubstantial. (D.I. 213-12 at ¶ 328.) That's because showing information "on the left and right sides of a single display provides substantially the same function as showing the same information on two different displays" since an operator of either would be able to "visually observe the respective parameters and manually change certain parameters." (*Id.*) He offers similar opinions concerning the similar function and result if there is a single ECM or two ECMs. (*See id.* at ¶¶ 355-56.) Like Dr. Lumkes's doctrine of equivalents opinion, Dr. Rahn explains why he reaches the conclusion he does. So I can say that his opinion flows from his analysis. *See Oddi*, 234 F.3d at 146.

      Dr. Meyer. Unlike Drs. Lumkes and Rahn, Dr. Meyer offers only a conclusory assertion about the applicability of the doctrine of equivalents. With respect to Claims 11, 17, and 18 of the '641 Patent, he opines, "[t]o the extent that any differences may

exist between the Accused Products machine and the features disclosed in Accused Claims of the '641 patent, a person of ordinary skill in the art would have understood these differences to be insubstantial." (D.I. 213-8 at ¶ 166.) Dr. Meyer cites no difference nor explains why those non-specified differences are insubstantial. His function-way-result test analysis fares no better. (*Id.*)

The total absence of Dr. Meyer's rationale for his doctrine of equivalents conclusion means that there's too large a gap between the underlying data and his ultimate opinion. I can't tell if his opinion is "supported by sufficient facts." *ZF Meritor*, 696 F.3d at 290. In such an instance, exclusion is appropriate. *See Oddi*, 234 F.3d at 146. Wirtgen says that Caterpillar's argument goes only to weight, but I would be ceding my gatekeeping role if I agreed. *See Daubert*, 509 U.S. at 591. Wirtgen has the burden to show by a preponderance of the evidence that Dr. Meyer's opinion is reliable. By failing to "outline a line of reasoning from a logical foundation" that supports this conclusion, Dr. Meyer's doctrine of equivalents opinion is unreliable. *Simpson*, 2013 WL 2255472, at *2.

### III.   CONCLUSION

I will exclude Mr. Bartkowski's testimony and Dr. Meyer's doctrine of equivalents opinion. I will permit the other testimony at issue in the Motions. An appropriate Order follows.

                                             **BY THE COURT:**

                                        */s/ Joshua D. Wolson*
                                        JOSHUA D. WOLSON, J.

January 16, 2024