IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **WIRTGEN AMERICA, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**CATERPILLAR, INC.,**<br><br>*Defendant.* | **Case No. 1:17-cv-00770-JDW** |

### MEMORANDUM

My Memorandum and Order dated February 5, 2024, put a significant speed bump in the way of Wirtgen America, Inc.'s trial plans because it excluded the testimony of Wirtgen's damages expert, Dr. Pallavi Seth. Rather than give up, Wirtgen decided to use the litigation equivalent of a road roller to pave over the speed bump by having Dr. Seth serve a supplemental expert report on Caterpillar, Inc. Caterpillar objects. After considering Caterpillar's motion to exclude Dr. Seth's revised report, I conclude that, although my earlier decision forced Dr. Seth to take a detour, the road is open for her to offer her damages opinions at trial.

I.   **BACKGROUND**

   A.   **The Patented Technologies**

At the time the alleged infringement began, Wirtgen America, Inc. ("Wirtgen") and Wirtgen GmBH were both wholly owned affiliates of a closely held family company. At

that time, Wirtgen GmBH owned the patents at-issue in this litigation. In 2017, Wirtgen sued Caterpillar alleging patent infringement. Wirtgen now asserts nearly 20 claims across 7 patents, which I outlined in my decision dated February 5th.

### B. Dr. Seth's Analysis

In her initial expert report, Dr. Seth calculated a reasonable royalty award using a hypothetical negotiation framework. She began by estimating the highest amount that would ensure Caterpillar found the agreement profitable (otherwise known as Caterpillar's maximum willingness to pay or "MWP" or "Accused Profits") and the lowest amount that would ensure Wirtgen found the agreement profitable (Wirtgen's minimum willingness to accept or "MWA"). Dr. Seth apportioned only the difference between those two values (the "joint surplus value"). In other words, she never apportioned Wirtgen's MWA. The method she used to find her apportionment rate was based on a count of family-level forward patent citations. She then split the apportioned joint surplus value between the parties using the Rubenstein bargaining model. She arrived at her final damages calculation by adding Wirtgen's split of the apportioned joint surplus value to Wirtgen's MWA.

On October 5, 2023, Caterpillar filed a *Daubert* motion to exclude that expert report and Dr. Seth's related testimony. Caterpillar argued that Dr. Seth (1) disguised a lost profits analysis as a reasonable royalty award; (2) used the wrong parties in her hypothetical negotiation; (3) impermissibly used actual lost profits instead of expected lost profits; (4)

2

failed to apportion her damages; and (5) failed to establish that convoyed sales are recoverable.

On February 1, 2024, I held a hearing about the potential exclusion of Dr. Seth's testimony. I ruled that Dr. Seth's reasonable royalty analysis was deficient and noted that I would memorialize the reasons for that decision in writing. On February 5, 2024, I issued a written opinion granting Caterpillar's *Daubert* motion. I concluded that Dr. Seth failed to properly apportion her damages estimate in a manner consistent with Federal Circuit precedent. Because that led to the exclusion of Dr. Seth's testimony in full, I did not address the other grounds that Caterpillar had raised in its motion. I also noted, without deciding, that Wirtgen may still be able to present parts of Dr. Seth's testimony that didn't run afoul of that opinion.

Following my opinion, Wirtgen served a supplemental damages report on Caterpillar, which explains that now Dr. Seth has "removed Wirtgen's minimum willingness to accept and applied the calculations from the previously disclosed forward patent-citation analysis and Rubenstein bargaining model to the entirety of the Accused Profits." (Supplemental Expert Report of Dr. Pallavi Seth dated February 6, 2024 ¶ 4.) The Accused Profits are the same as Caterpillar's MWP, which includes "both the sales of machines and of spare and replacement parts associated with those machines." (Expert Report of Dr. Pallavi Seth dated May 19, 2023 ¶ 17 n.10.) Dr. Seth explains that this is "purely a mathematical exercise" as otherwise her analysis is "unchanged." (Supp. Rept. ¶ 4.)

Pursuant to that exercise, she revises her total damages figure, reducing it from her prior report.

Caterpillar filed a motion to exclude Dr. Seth's supplemental expert report, and the Motion is ripe for disposition. I heard argument on this issue during the final pre-trial conference.

## II.  ANALYSIS

Caterpillar's Motion raises issues both about the timing of Dr. Seth's supplemental report and the substance of her methodology. I will address each in turn.

### A.  Late Disclosure/Exclusion

The Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (A) pertain to patent law, (B) bear an essential relationship to matters committed to the Federal Circuit's exclusive control by statute, or (C) clearly implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). Therefore, I apply Third Circuit law with respect to motions to exclude evidence in patent cases.

Federal Rule of Civil Procedure 26(a) requires that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). "If a party fails to provide information … as required by Rule 26(a) … the party is not allowed to use that information … at a trial, unless the failure was

substantially justified or harmless." FED. R. CIV. P. 37(c)(1). Because excluding evidence is an extreme sanction, my discretion to do so is not unlimited. See id.

In the Third Circuit, a district judge may exclude untimely expert opinions only after analyzing the Pennypack factors. See ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 298 (3d Cir. 2012). Those factors are: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified or the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which allowing such witnesses or evidence would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) any bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the excluded evidence." Id. (quotations omitted).

Dr. Seth's supplemental report qualifies as an untimely disclosure. It's true, as Wirtgen argues, that she's using a method that she disclosed in her original expert report. But her theory of how to use that method is new, meaning the supplemental report discloses a different opinion and a different reason for it than she expressed before. It is therefore a different opinion under Rule 26, not just an update to the opinion that she gave before. Although it's new, I conclude that the Pennypack factors weigh against exclusion.

Prejudice And Ability To Cure. While Caterpillar will suffer some prejudice from the late-disclosed report, I conclude that the prejudice is relatively minor, even though the disclosure is on the eve of trial. Dr. Seth disclosed her apportionment methodology in her

5

original report. Caterpillar had the opportunity to test that methodology in depositions and to have its experts critique it, both of which it did. So it's not left flat-footed going into trial. In that regard, this case is distinct from the situation that Judge Andrews confronted in *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. CV 19-1031-RGA, 2021 WL 5356293 (D. Del. Nov. 17, 2021). In that case, the expert "cobbled together a new theory" on the eve of trial. *Id.* at * 2. That's not what Dr. Seth did. She pivoted and adapted her analysis to account for my ruling, but she did so with a methodology of which Caterpillar was already aware, not something that she threw together at the last minute.

At the final pretrial conference, I asked Caterpillar to identify the prejudice that it suffered. The **only** thing it identified was a lost opportunity to raise a *Daubert* challenge to Dr. Seth's methodology. Caterpillar knew about Dr. Seth's forward patent citation and Rubenstein bargaining model methodology and could have challenged it in its *Daubert* motion. Caterpillar says that it didn't do so because it faced page limit constraints and the issue was relatively minor considering Dr. Seth's original use of Wirtgen's MWA as the royalty floor. Having re-reviewed the original briefing, I do think that Caterpillar had enough room to raise a challenge to Dr. Seth's methodology. It's failure to do so was a product of a tactical decision to focus more space on other arguments that could have been a bit more concise, not an inability to make the argument. In any event, Caterpillar has raised its methodological challenges to Dr. Seth's apportionment methodology in this

Motion, and I have reviewed them, So Caterpillar got its bite at the apple, even if it was a little later in the process.

In its brief in support of this Motion, Caterpillar also says that it lost the opportunity to depose Dr. Seth. It didn't repeat that assertion at the final pretrial conference, so I have to conclude it's not that big a deal. But I do recognize that Caterpillar made decisions about how to allocate its deposition time based on the opinions in front of it at the time, and that has changed. During the final pretrial conference, Wirtgen offered to make Dr. Seth available for a supplemental deposition before trial begins. I will permit Caterpillar to take Dr. Seth's deposition, focused only on her apportionment methodology and her decision to change the methodology in the wake of my decision. That deposition may not exceed two hours.

Ultimately, I conclude that Caterpillar might have suffered some prejudice, but not the great prejudice that one might expect from a new expert report on the eve of trial. And to the extent Caterpillar is suffering some prejudice, I can ameliorate it (though not eliminate it) by permitting Dr. Seth's deposition and by considering Caterpillar's new *Daubert* arguments on the merits.

*Disruption To Orderly Presentation*. Caterpillar has been on notice that Dr. Seth would testify at trial, and it has been on notice that she would tell the jury about her apportionment methodology. Allowing her to do so will not disrupt the orderly and efficient presentation of trial.

*Bad Faith/Willfulness*. There's no evidence that Wirtgen acted in bad faith or willfully. It put forward what it thought was a defensible expert damages report. When I excluded it, it pivoted quickly and adjusted the analysis to correct the errors I identified.

*Importance Of Evidence*. "The importance of the evidence [to be excluded] is often the most significant factor" for a judge to weigh. *ZF Meritor*, 696 F.3d at 254. In this case, Dr. Seth's analysis is critically important to Wirtgen's case. Indeed, its exclusion might put an end to Wirtgen's damages claim because Wirtgen would have a very hard time pointing the jury to a reasonable royalty range in its absence. This factor therefore weighs strongly in favor of permitting Dr. Seth's supplemental report.

On balance, weighing these factors, I will permit Dr. Seth to testify pursuant to her supplemental report. Her report is late, and it forces Caterpillar to scramble a bit in its trial preparation. But what it really does is elevate what used to be a minor issue to a major issue at trial, and Caterpillar can adjust.

**B.     Rule 702/*Daubert***

When I ruled on Caterpillar's original *Daubert* motion, I did not rule on several issues that it raised because my apportionment ruling obviated the need to do so. But with that issue off the table, in fairness to Caterpillar, I have revisited them. In addition, to ameliorate the prejudice that Caterpillar claims that it suffered from not raising a *Daubert* challenge that targets Dr. Seth's apportionment methodology, I have reviewed Caterpillar's new *Daubert* arguments. None of those arguments leads to exclusion.

Regional circuit law governs aspects of expert opinion admissibility unless the issues are unique to patent law. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390 (Fed. Cir. 2003). Federal Rule of Evidence 702 provides that a qualified expert may testify in the form of an opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. Rule 702's requirements establish "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Rule 702 mandates that the relevant expert testimony "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590; *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

Wirtgen, as the party offering the expert's opinion, bears the burden of proving that it meets Rule 702's restrictions. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). While the party must make more than a *prima facie* showing that an expert's methodology is reliable, "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." *Pineda*, 520 F.3d at 247. Rule 702 "has a liberal policy of

9

admissibility." *Id.* at 243 (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).

*Apportionment Challenges*. Dr. Seth's apportionment methodology consists of three steps. First, she focuses on net profits, not net revenues. In that way, she accounts for input costs. Then, she does a patent forward citation analysis to try to isolate the value of the various patents. Finally, she engages in a Rubenstein bargaining model to try to account for other factors, such as the companies' respective market power and ownership of unpatented features. I find that her analysis properly considers the patented features of the machines. *See Intel Corp. v. Future Link Sys.*, LLC, No. CV 14-377-LPS, 2017 WL 2482881, at *5 (D. Del. June 1, 2017) (finding a forward citation analysis sufficiently reliable to survive a *Daubert* attack). Dr. Seth has attempted to control for all of the non-patented features through her various steps, and therefore has tried to isolate the value of each of the patented features.

In its current motion, Caterpillar complains that this methodology doesn't take enough account of non-patented features that add value. Its criticisms might have merit, but they are not enough to merit exclusion because they suggest that Dr. Seth made what Caterpillar characterizes as factual errors, not methodological errors. Caterpillar's criticisms therefore go to weight, not to admissibility.

*Convoyed Sales*. "A 'convoyed sale' refers to the relationship between the sale of a patented product and a functionally associated non-patented product." *Am. Seating Co.*

10

*v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). A patentee may recover on a convoyed sale if (1) "both the patented and unpatented products 'together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit'" and (2) "the patent-related feature drives demand for the functional unit as a whole." *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 491 (D. Del. 2019) (quoting *Am. Seating Co.*, 514 F.3d at 1268); *see also Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1559 (Fed. Cir. 1983) (permitting consideration of convoyed sales when a patentee sought a reasonable royalty).

Dr. Seth's expert report addresses these two requirements. Dr. Seth factored in the sales of spare and replacement parts into her reasonable royalty analysis. Taken together with the patented features at-issue in this case, the spare and replacement parts create "a complete machine" or, at the very least, share a "functional relationship." *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371 (Fed. Cir. 2004) (quoting *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1543 (Fed. Cir. 1995) (*en banc*)). The spare and replacement parts of the Accused Machines are therefore distinguished from a situation where "devices [are] sold together merely for convenience and business advantage." *Rite–Hite Corp.*, 56 F.3d at 1551.

In *Juicy Whip*, the Federal Circuit held that Juicy Whip's patented beverage dispenser and the non-patented syrup used in the dispenser shared a functional relationship, so the jury could determine if Juicy Whip could recover for lost profits of the

11

syrup. *See Juicy Whip*, 382 F.3d at 1371. Wirtgen's spare and replacement parts are comparable to the syrup in *Juicy Whip*. They are sold after-market, they could come from a different source, and they work together with the patented machine. *Juicy Whip* dealt with an infringer trying to recover lost profits, but the Federal Circuit analyzes convoyed sales in the reasonable royalty rate context in the same manner, so that's a distinction without a difference. *See Deere & Co.*, 710 F.2d at 1559.

As to the second part of the convoyed sales test, it is Dr. Seth's opinion that the revenue associated with those spare and replacement parts "accrue directly from sales of cold milling machines themselves." (Expert Report ¶¶ 180, 246.) That's a reasonable opinion. Because those parts would be used to replace elements of the original machine, the universe of buyers of those spare and replacement parts would be those that already own the machine. The replacement parts don't "command a market value and serve a useful purpose independent of the patented product." *See Am. Seating Co.*, 514 F.3d at 1268. Caterpillar may disagree with Dr. Seth's opinion in this regard. However, at this stage, Dr. Seth's assumptions and analysis related to convoyed sales are appropriate. A jury may hear and weigh this evidence against Caterpillar's criticisms.

<u>Reliance On Lost Profits</u>. Dr. Seth's heavy reliance on lost profits in her reasonable royalty calculation was permissible. *See Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1362 (Fed. Cir. 2017) (citing *Rite-Hite Corp.*, 56 F.3d at 1554–55); *see also FloodBreak, LLC v. Art Metal Indus.*, LLC, No. 3:18-CV-503 (SRU), 2020 WL 6060974, at *16

(D. Conn. Oct. 13, 2020) (allowing a damages expert who "weighed lost profits more heavily than other factors in her hypothetical negotiation" to testify at trial); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *22 (N.D. Cal. Feb. 25, 2014) (same).

*Proper Entities*. Dr. Seth's use of Wirtgen (as opposed to Wirtgen GmbH) in the hypothetical negotiation was a permissible assumption. Generally, the licensor in a hypothetical negotiation must have "at that time held all right, title and interest in the patent." *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-WHO, 2018 WL 6727826, at *8 (N.D. Cal. Dec. 21, 2018) (alterations and citation omitted). In Dr. Seth's opinion, the interests of Wirtgen GmbH and Wirtgen America were aligned such that Wirtgen GmbH would have assigned its patents to Wirtgen America right before a hypothetical negotiation. There is some record evidence supporting this opinion.

The corporate relationship between Wirtgen GmBH and Wirtgen distinguishes this situation from the cases cited by Caterpillar. In those cases, there was no reasonable finding that the patent holder would have granted its patent rights to the hypothetical licensor. *See, e.g.*, *Warsaw Othropedic, Inc. v. Nuvasive, Inc.*, 2016 WL 4536740 (S.D. Cal. June 15, 2016) (patent holder and hypothetical licensor were competitors); *Opticurrent, LLC*, 2018 WL 6727826, at *9 (expert did not show that the individual inventor would have assigned its rights to a company). Caterpillar is free to attack the soundness of this opinion at trial, but this issue goes to weight.

*Actual Data*. Dr. Seth could rely on actual profits post-infringement as opposed to expected profits. *See Lucent Technologies, Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1333 (Fed. Cir. 2009). Because Caterpillar experienced an alleged windfall from its alleged infringement, that information may be particularly probative here. *See On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 410 (S.D.N.Y. 2015).

## III. CONCLUSION

Wirtgen fixed Dr. Seth's damages report to take care of the apportionment issue. It did so in a minimally disruptive way, so the extreme sanction of exclusion isn't warranted. Wirtgen must make Dr. Seth available to Caterpillar should Caterpillar seek to re-depose her before trial. In light of these conclusions, I will deny Caterpillar's additional requests like those that seek to bar any of Wirtgen's fact witnesses from discussing damages and profits. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

February 9, 2024