IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WIRTGEN AMERICA, INC.<br><br>*Plaintiff/Counterclaim Defendant,*<br><br>v.<br><br>CATERPILLAR INC.<br><br>*Defendant/Counterclaim Plaintiff.* | Case No. 17-770-JDW |

**PLAINTIFF'S COMBINED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS THAT THE '538 PATENT IS INVALID AND OPPOSITION TO CATERPILLAR'S CROSS MOTION UNDER FED. R. CIV. P. 12(c)**

Dated: July 2, 2024

OF COUNSEL:

Ryan D. Levy
Seth R. Ogden
William E. Sekyi
Mark A. Kilgore
PATTERSON INTELLECTUAL
PROPERTY LAW, P.C.
1600 Division Street, Suite 500
Nashville, Tennessee 37203
(615) 242-2400
*rdl@iplawgroup.com*
*sro@iplawgroup.com*
*wes@iplawgroup.com*
*mak@iplawgroup.com*

- and -

Daniel E. Yonan
Paul A. Ainsworth
William H. Milliken
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600
*dyonan@sternekessler.com*
*painsworth@sternekessler.com*
*wmilliken@sternekessler.com*

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*swilson@ycst.com*

*Attorneys for Plaintiff Wirtgen America, Inc.*

i

TABLE OF CONTENTS

I.    Introduction ................................................................................................................... 1

II.   Implementing an abstract idea into a generically claimed, conventional machine does not automatically render the patent eligible at step one. .......................................................... 2

      A.    The recitation of conventional physical structures does not alter the focus of a claim directed to an abstract idea. ............................................................................. 2

      B.    Wirtgen's identified abstract idea is specifically tied to the claim language. .......... 4

III.  Caterpillar does not identify any inventive concept at step two. ........................................ 5

      A.    The clutch is conventional. ................................................................................... 6

      B.    The remaining components are conventional. ........................................................ 8

      C.    The arrangement of the components is conventional and the components operate according to the components' conventional functions. ............................................ 8

IV.   There are no claim construction issues that bear on eligibility. .......................................... 9

V.    The Court should dismiss this case with prejudice. ............................................................ 9

## TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ................................................................................................... 2, 4

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
966 F. 3d 1347 (Fed. Cir. 2020) .................................................................................... 1

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
967 F. 3d 1285 (Fed. Cir. 2020) .................................................................................... 3

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015) ..................................................................................... 9

*Beteiro, LLC v. DraftKings Inc.*,
No. 2022-2275, --- F. 4th ---, 2024 WL 3077636 (Fed. Cir. June 21, 2024) .......................... passim

*Bilski v. Kappos*,
561 U.S. 593 (2010) ...................................................................................................... 9

*Chamberlain Grp. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) ............................................................................. 2, 5, 6

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ................................................................................... 2, 6

*Diamond. v. Diehr*,
450 U.S. 175 (1981) ...................................................................................................... 3

*Immersion Corp. v. Fitbit, Inc.*,
313 F. Supp. 3d 1005 (N.D. Cal. 2018) ..................................................................... 3, 4

*In re TLI Commc'ns Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ....................................................................................... 1

*Lumitech Intellectual Property LLC v. Ikea Supply AG*,
No. 2:20-cv-04399-JDW, 2021 WL 4499407 (E.D. Pa. April 22, 2021) ..................... 3, 4

*Parker v. Flook*,
437 U.S. 584 (1978) ...................................................................................................... 4

*Recentive Analysis, Inc. v. Fox Corp.*,
692 F. Supp. 3d 438 (D. Del. 2023) ............................................................................ 10

*RICPI Communications LLC v. JPS Interoperability Solutions, Inc.*,
No. 18-1507-RGA, 2019 WL 1244077 (D. Del. March 18, 2019) ............................................. 3, 4

*Sanderling Management Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ................................................................................................... 10

*SAP Am. Inc. v. InvestPic*,
898 F.3d 1161 (Fed. Cir. 2018) ............................................................................................... 5, 6

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019) ............................................................................................... 1, 6

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) .................................................................................................. 1

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) ................................................................................................ 1, 8

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*,
635 F. App'x 914 (Fed. Cir. 2015) ............................................................................................. 6

*Weisner v. Google LLC*,
51 F.4th 1073 (Fed. Cir. 2022) ................................................................................................... 8

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) .................................................................................................. 1, 2

## I. Introduction

Caterpillar asks the Court to hold that a clutch, an engine, a variable transmission, and a rotor are unconventional features in a milling machine and thereby supply an inventive concept. But even Caterpillar cannot bring itself to affirmatively state that any particular component is more than conventional. Nor can Caterpillar identify a non-conventional aspect of any mechanical component or even a non-conventional use of any mechanical component. Rather, the mechanical components in the '538 patent perform their conventional functions. For example, the clutch disconnects a power source from a driven element. D.I. 62, Ex. 3 ('538 patent) 3:30-37. That is what clutches do and is the epitome of conventional. And the PTAB's decision on non-obviousness is beside the point because the statutory requirements under § 101 are distinct and independent from the requirements under § 103. *Two-Way Media Ltd. v. Comcast Cable Commc'ns,* LLC, 874 F.3d 1329, 1339-40 (Fed. Cir. 2017).

Caterpillar's eligibility arguments largely depend on the contention that being a physical device alone saves a patent from § 101. That is legally wrong. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1043–44 & n.2 (Fed. Cir. 2021); *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1352 (Fed. Cir. 2021); *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). Caterpillar also relies heavily on the machine-or-transformation test. After *Alice*, however, "passing th[at] test alone is insufficient" to satisfy step two. *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019). Indeed, the Federal Circuit has essentially abandoned it.

"The lesson to patent drafters should now be clear … simply reciting a functional result at the point of novelty poses serious risks under section 101." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 966 F. 3d 1347, 1356 (Fed. Cir. 2020) (Chen., J. concurring in the denial of rehearing en banc). Like in *American Axle*, the tangible elements of claim 13 of the '538 patent do not eclipse the functional, result-oriented nature of the claims. Indeed, throughout 20 pages of

1

argument, Caterpillar never once grapples with the point that the patent merely claims a *result*, not a concrete *mechanism* of achieving that result. That is fatal: "Claims of this nature are almost always found to be ineligible." *Beteiro, LLC v. DraftKings Inc.*, No. 2022-2275, --- F. 4th ---, 2024 WL 3077636, at *4 (Fed. Cir. June 21, 2024).

## II. Implementing an abstract idea into a generically claimed, conventional machine does not automatically render the patent eligible at step one.

### A. The recitation of conventional physical structures does not alter the focus of a claim directed to an abstract idea.

Determining the focus of the claim involves more than asking if it recites a tangible product. Instead, the Court must ascertain the focus of the claim as a whole. Caterpillar's step one analysis repeatedly attempts to brush away the role an algorithm might play within a tangible system, arguing that "[i]t is not sufficient to prove ineligibility of a machine claim to point to an algorithm or equation that is merely one part of a claim 'otherwise directed to patentable subject matter.'" D.I. 418 ("Opp.") at 9. But Caterpillar's analysis glosses over the required showing that the claims are "otherwise directed to patentable subject matter," presuming the tangible nature of the claims to be sufficient alone. The Federal Circuit has repeatedly rejected this line of argument.

As "the Supreme Court indicated in *Alice*, whether a device is 'a tangible system (in § 101 terms, a "machine")' is not dispositive." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 224 (2014)) (claims to an electric vehicle charging station were directed to an abstract idea and ineligible). Indeed, "[w]ithout more, the mere physical nature" of a claim's elements "is not enough to save the claims from abstractness." *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348 (Fed. Cir. 2019) (claims to garage door openers were directed to an abstract idea and ineligible). The Federal Circuit has consistently reaffirmed that a claim reciting tangible elements does not save a claim from being directed to an abstract idea. *See, e.g.*, *Yu*, 1 F.4th at 1043–44 & n.2. This

principle is not limited to computer components but also applies to other devices like automobiles. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F. 3d 1285, 1292 n.3 (Fed. Cir. 2020).

Caterpillar's cited case law does not counsel otherwise. In *Lumitech Intellectual Property LLC v. Ikea Supply AG*, the claimed structures were unconventional: the patent "describe[d] a structure for an LED light that can produce different types of white light with a high level of efficiency and that can be adjusted *in a way LED lights previously could not*." 2021 WL 4499407, at *2 (E.D. Pa. April 22, 2021). While the physical structure was described generically as a "module," the new functionality evinced that the structure was non-conventional. *Id.*

Caterpillar's other cited cases are inapposite for similar reasons. *Immersion Corp. v. Fitbit, Inc.* found that the hardware components were not conventional because the patent "state[d] that no previous touchpad incorporated haptic feedback and describe[d] the problem as how to notify a user that a task has completed or another event has occurred when the user is not looking at the screen." 313 F. Supp. 3d 1005, 1024 (N.D. Cal. 2018). The patent disclosed a "new arrangement of known components that solve[d] the problem of how to provide non-audio, non-visual notification to a user." And, in *RICPI Communications LLC v. JPS Interoperability Solutions, Inc.*, the Court did not find the claims non-abstract simply because they recited a two-way radio. 2019 WL 1244077, at *4 (D. Del. March 18, 2019). Instead, the claims described a detailed hardware arrangement that provided functionality that two-way radios did not previously have. *Id.* at *4-5.

*Diamond. v. Diehr*, 450 U.S. 175 (1981), is of no help to Caterpillar either. The claimed invention was a process for curing rubber that involved a specific series of steps, including continuously measuring the temperature inside the mold and then using that measurement to "repeatedly recalculate[] the cure time" through a known equation. *Id.* at 178 & n.3, 187. "The invention in *Diehr* used a 'thermocouple' to record constant temperature measurements inside the

3

rubber mold—something 'the industry ha[d] not been able to obtain.'" *Alice*, 573 U.S. at 223 (quoting *Diehr*, 450 U.S. at 178 & n.3). These claims were thus "patent eligible because they improved an existing technological process." *Id.*[1]

Caterpillar does not identify any analogous aspect of claim 13. Caterpillar does not argue that the claimed machine (or any of its components) operates in a way milling machines previously could not (*Lumitech*, *RICPI*, and *Diehr*) or had new features (*Immersion* and *Diehr*). The physical components in the claim "are indisputably generic and conventional." Mot. 7. The purported innovation here is the *result* that rotor speed is maintained and fuel efficiency is maximized. *Id.* at 9-10. But claims drafted with "result-oriented functional language, containing no specificity about how the purported invention achieves those results …. are almost always found to be ineligible." *Beteiro*, 2024 WL 3077636 at *4. To this key point, Caterpillar has no answer.

B. **Wirtgen's identified abstract idea is specifically tied to the claim language.**

Caterpillar's contention (at 15) that Wirtgen overgeneralized the claims is incorrect. Caterpillar appears to believe that the proper recitation of the abstract idea must specifically account for every element of the claim, asserting that Wirtgen should have included the recitation of the clutch. *See* Opp. 15. But step one is not an exercise in regurgitating the claim language. The Federal Circuit has repeatedly explained that the analysis should look at "the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter."

---

[1] Notably, *Diehr* distinguished the claims in in that case from those in *Parker v. Flook*, 437 U.S. 584 (1978), which involved claims to a method for computing an "alarm limit" by plugging various variables into an equation. *See Diehr*, 450 U.S. at 186-87. The *Flook* claims were ineligible because, among other things, the patent did not explain how to determine any of those underlying variables or describe any technical details underlying the variables' relationship with the alarm limit. *See id.* at 186-87 & n.10, 192 n.14. Similar reasoning holds for the '538 patent: claim 13 "does not specify how to identify any 'predefined efficiency points' or how to use that information along with the machine's operating parameters to adjust engine speed and gear ratio to optimize fuel efficiency while maintaining rotor speed." D.I. 386 ("Mot.") 10-11.

4

*Chamberlain*, 935 F.3d at 1346. And, here, the purported advance is "the abstract idea of selecting operating conditions of a machine—namely, engine speed and gear ratio—to optimize fuel efficiency while maintaining a constant rotor speed." Mot. 6-7. This result is accomplished via "generic computer functions [that] do nothing to improve the underlying technology, placing the claims in 'the familiar class of claims that do not "focus …on [] an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools."'" Mot. 8-9 (quoting *SAP Am. Inc. v. InvestPic*, 898 F.3d 1161, 1168 (Fed. Cir. 2018)).

Further, Wirtgen demonstrated that the physical components are not part of the focus of the claims because "an engine, a variable transmission, a rotor, a controller, and a clutch" "are indisputably generic and conventional." *Id.* at 7. This approach is consistent with *Chamberlain*. That case held that claims on a garage door opener were directed to wireless communications—even though they also recited hardware—because the wireless elements were the "described difference between the prior art movable barrier operator systems and the claimed movable barrier operator system." 935 F.3d at 1346. Wirtgen's focus on the claimed result, rather than the physical components, is further consistent with Caterpillar's arguments in prosecution, where Caterpillar contended the claims were patentable because the prior art "is silent as to adjusting the engine speed based on engine load and one or more predefined efficiency points that may be at least partially based on predetermined fuel consumption rates." D.I. 418-1, PageID 38768. The Examiner identified this same argument for allowing the claims. D.I. 418-1, PageID 38743.

Wirtgen does not contend that the controller alone renders the claims abstract. *Contra* Opp. 13–15. The point is that the algorithm—i.e., describing only the results that the controller achieves—is the claims' focus and is abstract. Mot. 6-11.

III. **Caterpillar does not identify any inventive concept at step two.**

Caterpillar fails to explain what component or arrangement of components is not

5


conventional. Caterpillar relies instead on implications from the IPR, vague allusions to "state changes," and the essentially abandoned machine-or-transformation test. *Contra Solutran*, 931 F.3d at 1169 (claim that passes the machine-or-transformation test does not necessarily contain an inventive concept at *Alice* step two); *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 919 (Fed. Cir. 2015) (same). This should not be surprising—Caterpillar cannot in good faith assert that there is an inventive concept lurking in its generically claimed clutch, engine, variable transmission, or rotor. "These conventional components, all recited in a generic way, are no better equipped to save the claim from abstractness than were, for example, the conventional computer used in *Alice*." *Chamberlain*, 935 F.3d at 1348.

  A. **The clutch is conventional.**

  Caterpillar never affirmatively states that the clutch is not conventional. Caterpillar instead discusses the *inter partes review* (IPR) and the Board's holding that Wirtgen failed to show claim 13 was unpatentable. These arguments fail.

  As an initial matter, it is important to be clear what the PTAB actually found to be missing from the prior art. The references Wirtgen asserted in that proceeding undisputedly included clutch arrangements, *see, e.g.*, Opp. 5-6, each more complex than the arrangement in the claims. The PTAB found claim 13 not unpatentable because, in its view, those references did not disclose a clutch configured to disengage the rotor from the engine. *See* D.I. 418-2 at 54, 63-64. That finding, even if assumed correct, does not help Caterpillar at step two for several related reasons.

  *First*, the limitation of claim 13 reciting that the controller is "configured to selectively disengage the rotor from the engine through control of the clutch" is just another functionally claimed *result*. Results, in themselves, are abstract, *see Beteiro*, 2024 WL 3077636 at *4, and an abstract idea cannot as a matter of law impart an inventive concept, *see ChargePoint*, 920 F.3d at 774. That is so even if the abstract idea is new or non-obvious. *See SAP*, 898 F.3d at 1170; *contra*

6

Opp. 2 (incorrectly suggesting that claim 13 imparts an inventive concept because it was found non-obvious). Eligibility and novelty are separate inquiries. *See Diehr*, 450 U.S. at 188-90.

*Second*, the patent itself conclusively refutes any contention that Caterpillar discovered some inventive type of clutch or some inventive arrangement for a clutch. The specification mentions a clutch exactly once, in the following two-sentence passage:

> As also shown in Fig. 2, the CVT 124 may further include a clutch 140, a mechanical arrangement 142, a hydrostatic arrangement 144, as well as a planetary gear set 146 having a sun gear 148, planetary gears 150, a carrier 152 and a ring gear 154. In the embodiment shown, the clutch 140 may selectively couple the engine output 136 to one or more of the mechanical arrangement 142 and the hydrostatic arrangement 144.

'538 patent, 3:30-37. This limited discussion "can only plausibly mean that the patent applicant drafted the specification understanding that a person of ordinary skill in the art knew what a [clutch] was, how to include it on a [milling machine], and that using it for the purposes disclosed in the patent was routine, conventional, and well-understood." *Beteiro*, 2024 WL 3077636, at *5 (rejecting patentee's allegation that the claimed use of GPS in a mobile phone was an inventive concept because the specification only briefly addressed that concept).

*Third*, to the extent Caterpillar is trying to imply that claim 13's clutch enables the claimed machine to solve the purported problem of "maintaining stable rotor speeds and improving fuel efficiency," Opp. 2, Caterpillar is wrong. That result is recited in claim 6, which does not require a clutch at all. So the suggestion that the additional limitation added by claim 13 has anything to do with the feature that Caterpillar relied on to gain allowance is plainly incorrect.[2]

The '538 patent recites a conventional clutch, and Caterpillar cannot argue otherwise. The clutch therefore cannot impart an inventive concept at step two.

---

[2] Caterpillar also ignores that, during prosecution, the examiner found claim 13's clutch limitation met by Parker—a finding Caterpillar did not challenge. D.I. 418-1, PageID 38778.

7

### B. The remaining components are conventional.

Caterpillar does not identify a non-conventional aspect of the engine, variable transmission, or the rotor. In fact, Caterpillar's recitation of the '538 patent's description of these elements appears to confirm that the features are conventional. *See* Opp. 4; *cf. Weisner v. Google LLC*, 51 F.4th 1073, 1083-84 (Fed. Cir. 2022) ("The specification describes the components and features listed in the claims generically, supporting the conclusion that these components and features are conventional, not inventive concepts in the patents."). Each of the components identified in Caterpillar's description is either generic (e.g., the engine is "a power source") or conventional (e.g., the variable transmission has "hydrostatic, mechanical, or hydromechanical drive arrangement[s]."). The passage even admits that the described rotor has "typical applications." Caterpillar's arguments show the components lack an inventive concept and align with Wirtgen's original contention that these components are conventional. *See* Mot. 1, 6-7, 11.

### C. The arrangement of the components is conventional and the components operate according to the components' conventional functions.

Caterpillar does not identify any unconventional aspect of the combination of the elements. Caterpillar just says "[t]hose components undergo state changes, including to engine speed, transmission gear ratio, and the clutch must disengage the rotor from the engine." Opp. 17. But no evidence suggests the mechanical components operate in a way other than their ordinary function. The algorithm selects pre-existing operating parameters and the machine performs those parameters as normal. An operator could choose the same conditions and achieve the same result.

While an inventive concept may be found in the arrangement of the claim elements, this occurs where the arrangement is unconventional and "achieves more than the expected sum" of the hardware and software functions provided by each element. *Universal Secure Registry*, 10 F.4th at 1353. Caterpillar identifies nothing like that here, nor can it. The purportedly inventive

8

feature—the feature that led to allowance—is the *result* that the controller operates those conventional elements to adjust the engine speed and gear ratio to improve fuel efficiency while maintaining a desired rotor speed. A result, without more, is not an inventive concept; it is merely the abstract idea itself. *See American Axle*, 967 F.3d at 1299.

### IV.    There are no claim construction issues that bear on eligibility.

Attempting to postpone the inevitable, Caterpillar asks the Court to defer ruling on eligibility. The principal basis for this request is Caterpillar's contention that the claims' reference to a "rotor" somehow limits the claims to road-milling machines. *See* Opp. 13, 19–20.[3]

The purported claim-construction issue Caterpillar raises is irrelevant. Even if Caterpillar were correct that the claims, notwithstanding their plain language, are somehow limited to road-milling machines, that would not matter: "the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'" *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) (quoting *Diehr,* 450 U.S. at 191–92). A claim to a machine that accomplishes an abstract result, without more, is still ineligible even if it is limited to a particular type of machine.[4]

### V.    The Court should dismiss this case with prejudice.

Caterpillar requests in the alternative for leave to amend the Complaint to allege additional facts. That request should be denied because Caterpillar's amendments would be futile. "The claims of the patents say what they say," and amendment would therefore "not change" the

---

[3] Caterpillar's suggestion that Wirtgen's motion is premature is belied by its cross-motion for judgment on the pleadings. That amounts to a tacit agreement that the eligibility issue is ripe for determination at this stage. This is an issue of law that can and should be resolved now.

[4] Put differently, "the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015); *contra* Opp. 14 (incorrectly arguing that "[c]laim 13 is not abstract because it does not seek to preempt other uses of the so-called algorithm or equation").

eligibility analysis. *Recentive Analysis, Inc. v. Fox Corp.*, 692 F. Supp. 3d 438, 457 (D. Del. 2023).

Caterpillar points to a declaration from its expert Dr. Reinholtz. *See* Opp. 20. Caterpillar has not proposed any specific amendments, but instead appears to suggest that it would add allegations based on the declaration of its expert Dr. Reinholtz. But Dr. Reinholtz's step-one analysis does nothing more than regurgitate the point that several claim elements are physical elements and disagree with Wirtgen's assessment of the scope of the claims. D.I. 219 ¶¶ 14-20. This testimony adds nothing to the statements in the patents, and—as explained above—the dispute about whether the claims are limited to a milling machine is irrelevant to eligibility.

For step two, Dr. Reinholtz does not provide any opinions that could demonstrate that the claims have an inventive concept (even if those opinions are accepted as true). Dr. Reinholtz describes the IPR proceeding, *id.* ¶¶ 22, 25; identifies the functional results recited in the claim, *id.* ¶ 23; and recites conclusions without any facts. *Id.* ¶¶ 21, 24. For example, paragraph 24 says that the mechanical components' ordinary functions constitute an unexplained "state change" and repeats the steps of the algorithm (the abstract idea). That conclusory testimony does not move the needle on eligibility at all. "[G]eneralized assertions that factual considerations about the state of the art preclude a decision at the pleadings stage do not prevent a district court from granting a motion to dismiss." *Beteiro*, 2024 WL 3077636, at *6; *see also Sanderling Management Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) (district court was not required to credit "conclusory statements that the claimed steps were not well-known, routine, and conventional"). And Caterpillar has not identified any other facts it would allege given the opportunity to amend.

In short, the claims "say what they say." *Recentive Analysis*, 692 F. Supp. 3d at 457. They are directed to a functional result, fail to describe any specific innovative mechanism by which that result is achieved, and otherwise fail to recite any inventive concept.

10

Dated: July 2, 2024

| | |
|---|---|
| OF COUNSEL: | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Ryan D. Levy<br>Seth R. Ogden<br>William E. Sekyi<br>Mark A. Kilgore<br>PATTERSON INTELLECTUAL PROPERTY LAW, P.C.<br>1600 Division Street, Suite 500<br>Nashville, Tennessee 37203<br>(615) 242-2400<br>*rdl@iplawgroup.com*<br>*sro@iplawgroup.com*<br>*wes@iplawgroup.com*<br>*mak@iplawgroup.com* | /s/ *Adam W. Poff*<br>Adam W. Poff (No. 3990)<br>Samantha G. Wilson (No. 5816)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>*apoff@ycst.com*<br>*swilson@ycst.com*<br><br>*Attorneys for Plaintiff Wirtgen America, Inc.* |

- and -

Daniel E. Yonan
Paul A. Ainsworth
William H. Milliken
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600
*dyonan@sternekessler.com*
*painsworth@sternekessler.com*
*wmilliken@sternekessler.com*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2024, I caused the foregoing document to be served by email upon the following counsel:

Bindu A. Palapura
Andrew L. Brown
POTTER ANDERSON & CORROON, LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
*bpalapura@potteranderson.com*
*abrown@potteranderson.com*

James C. Yoon
Ryan R. Smith
Christopher Mays
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
*jyoon@wsgr.com*
*rsmith@wsgr.com*
*cmays@wsgr.com*

Lucy Yen
Michelle Dang
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
*lyen@wsgr.com*
*mdang@wsgr.com*

Matthew A. Macdonald
Naoya Son
Alexander Turner
Neil N. Desai
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
*matthew.macdonald@wsgr.com*
*nson@wsgr.com*
*aturner@wsgr.com*
*ndesai@wsgr.com*

*caterpillar@wsgr.com*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Adam W. Poff*
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
swilson@ycst.com
astombaugh@ycst.com